[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO REARGUE, CLARIFY AND/OR ARTICULATE, DATED OCTOBER 30, 2001
The court shall articulate the issues raised in this motion beginning with the division of two parcels of real estate acquired by the parties during this twenty-three year marriage. CT Page 792
Some of the background facts are relevant to these issues. The marital home, located at 25 Walnut Street in Naugatuck, Connecticut, was held in joint names and purchased in 1979, about one year after their marriage. During these past twenty-two years, the parties paid for the mortgage, taxes, insurance, repairs, and other related expenses from joint marital funds. It was undisputed that both parties were employed during the marriage and contributed in maintaining this marital home. At trial, the attorneys for these parties agreed that the present net equity of the marital home is $103,000, or $51,500 each.
The second parcel of real estate, located at 67 Hickory Road, Naugatuck, was quitclaimed equally to the defendant and his brother by his parents in 1986. Neither the defendant nor his brother paid any consideration to the parents for this transfer. They did not pay any of the expenses for this property during these past fifteen years. Their eighty-two year old widowed mother still resides there and does not pay them any rent. At trial, the attorneys for the parties agreed that this property has a present net value of $130,000. The defendant testified that the brother was solely responsible for the $26,000 mortgage; therefore, the court finds the defendant's one-half interest to be presently worth $65,000.
In the plaintiffs proposed orders, she urged the court for the defendant to convey his one-half interest in this marital home to her. She wanted to continue living there with her two adult daughters, since they have been living in the marital home the past twenty-two years, and it is the only home she has lived in throughout this marriage.
In the defendant's proposed orders, he urged the court to order the property sold and to divide the net proceeds equally. He claims the sale would give him the cash liquidity he presently needs.
The court accepted the plaintiffs argument and ordered the defendant to convey his one-half interest in the marital home to her.
The court ordered the plaintiff to release to the defendant any interest she may have in the property located at 67 Hickory Road in Naugatuck.
"The distribution of assets in a dissolution action is governed by § 46b-81, which provides in pertinent part that a trial court may assign to either the husband or the wife all or any part of the estate of the other. . . . In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, CT Page 793 occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. . . ." (Internal quotation marks omitted.) Bender v.Bender, 258 Conn. 733, 741-742 (2001). The Supreme Court reiterated the general rule "that trial courts are empowered `to deal broadly with property and its equitable division incident to dissolution proceedings.'" Id., 743.
In the defendant's brief, he claims that it appears the court made a mathematical error in assigning these two properties. The short answer to that claim is that the court gave more weight to the plaintiffs position. It considered the length of the marriage, the plaintiffs monetary and non-monetary contributions in maintaining the property, the defendant's fault for the marital breakdown, and the plaintiffs desire to live in the only home she and her daughters have lived in during the entire marriage. It also considered all the other criteria in § 46b-81
of the Connecticut General Statutes. Damon v. Damon, 23 Conn. App. 111,113 (1990). The court believes the division of the two parcels of real estate to be fair and equitable.
The parties are both forty-seven years of age, in general good health, and are able to be employed on a full-time basis. The defendant is president of a bank and earns a gross annual salary of over $62,000. She is employed in Human Resources at Taft School and earns a gross annual salary of about $30,000. He has twice her earning capacity and therefore has the better opportunity to acquire future capital assets and income.
The court also found the husband was involved in an extramarital affair with a bank employee, and the court believed the plaintiffs testimony that this affair was the primary cause for the breakdown of the marriage.
The court also credited the plaintiffs contribution to the marriage as homemaker and mother. While these children were infants and not going to school, the plaintiff worked nights as a waitress to help meet their family obligations. The court considered her monetary as well as her non-monetary contributions to this marriage. O'Neill v. O'Neill,13 Conn. App. 300, 308 (1988).
The court also found that the wife was entitled to an equal split of the other liquid assets, shown on his financial affidavit to be $287,456, and $27,502 on her affidavit, for total liquid assets of $314,958. Each party will receive one-halt or approximately $157,479, by CT Page 794 way of a Domestic Relations Order. The court has considered all of the testimony, the exhibits in evidence, the case law, and the criteria for the distribution of assets under § 46b-81 of the Connecticut General Statutes, and believes these orders are fair and equitable. Rubin v.Rubin, 204 Conn. 224, 228 (1987); Knock v. Knock, 224 Conn. 776, 796-797
(1993).
The court was not convinced that the defendant was forced to live alone for the past two years in a one bedroom apartment. After the court divided these liquid assets equally, the defendant will receive approximately $157,479. He can then well afford to obtain larger living quarters once these assets are divided.
The lifetime alimony award of $175 per week is also fair and equitable considering the length of the marriage, the net weekly income of the parties, their respective needs, and all of the other criteria under § 46b-82 of the Connecticut General Statutes. His net weekly income is listed on his financial affidavit as $701. The court adds the $125 per week he deposits in his 401K and the $125 he pays into a trust fund for the children, which gives him a net total weekly income of $951. The plaintiffs net weekly income is listed as $500 on her financial affidavit. By awarding her lifetime alimony of $175 per week, will give her a net weekly income of $675, leaving him with $776 per week, which the court believes is a fair and equitable award.
Under the present federal tax regulations, the $175 per week alimony award is deductible to him and is income to her, which gives him a tax advantage over her.
Furthermore, the defendant may seek to modify the $175 per week alimony order at age sixty-two when he is eligible to retire, or thereafter, pursuant to § 46b-86 (a) of the Connecticut General Statutes.
At the hearing on this motion held November 30, 2001, the attorneys agreed to amend the first sentence in paragraph IV on page 11 of the court's memorandum of decision of October 11, 2001 which would now read as follows: "The parties shall share equally (50 percent/50 percent) deferred compensation plans and their respective pension plans by way of QDRO." The words "with the right of survivorship to both parties" are deleted.
The defendant's $100,000 life insurance policy to insure the plaintiffs alimony award in case of his death may be modified if and when the defendant moves to modify the alimony after his retirement pursuant to § 46b-86 (a) of the Connecticut General Statues. CT Page 795
At the November 30, 2001 hearing, the parties agreed that the defendant may remove certain items of personal property from the marital home after giving the plaintiff reasonable notice.
For all of the foregoing reasons, the defendant's motion dated October 30, 2001 is denied.
Romeo G. Petroni, J.T.R.